Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 11:32 AM-23CV007475
0G586 - P64
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 1 of 32 PAGEID #: 175

IN THE COURT OF COMMON PLEAS
STATE OF OHIO, COUNTY OF FRANKLIN
GENERAL DIVISION

| | |
|---|---|
| JEREMY BAYER, on behalf of himself and all others similarly situated, 8946 Winchester Road Carroll, Ohio 43112<br><br>    Plaintiff,<br><br>v.<br><br>COMMUNITY INSURANCE COMPANY d/b/a ANTHEM BLUE CROSS and BLUE SHIELD, 4361 Irwin Simpson Road Mason, Ohio 45040<br><br>    Defendant. | CASE NO.: |

**COMPLAINT**
**(Jury Demand Endorsed Hereon)**

Plaintiff Jeremy Bayer, on behalf of himself and all others similarly situated, sues Defendant, Community Insurance Company, d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), and states:

**INTRODUCTION**

1.    This class action is brought on behalf of Ohio consumers who purchased insurance from Anthem through the Affordable Care Act ("ACA") marketplace during open enrollment periods 2018-2023. To induce consumers to purchase its insurance, Anthem boasts a sizeable directory of healthcare providers listed as "in-network" providers. Many of these providers, however, are not currently in Anthem's network, are not accepting new patients, or do not practice the specialty described by Anthem.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 2:32 AM-23CV007417
0G586 - P65
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/24/23 Page: 9 of 132 PAGEID #: 136

2. Inaccurate directories of in-network providers are colloquially termed "ghost networks," and have come to be recognized as a major obstacle to consumers' access to affordable healthcare.[1]

## PARTIES

3. Plaintiff Jeremy Bayer is an Ohio citizen, residing at 8946 Winchester Road, Carroll, Ohio.

4. Defendant Anthem is an Ohio corporation, according to its filings with the Ohio Division of Corporations. Its principal office is located at 4361 Irwin Simpson Road, Mason, Ohio 45040.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter as it arises from the breach of a contract signed in Ohio, to be performed in Ohio, and governed by Ohio law.

6. This Court has personal jurisdiction over this action because Anthem has sufficient minimum contacts within Ohio.

7. Venue is appropriate because several facts giving rise to this action occurred here. For example, Anthem misrepresented the network status of healthcare providers who provided treatment to Plaintiff Bayer, and whose offices are located in Colombus, Ohio.

## BACKGROUND ALLEGATIONS

8. Over a decade ago, Congress passed the Affordable Care Act ("ACA"). The ACA requires that every state maintain an exchange in which consumers may purchase individual health insurance policies from private insurers. The ACA requires each eligible insurance company to

---

[1] Abigail Burman, *Laying Ghost Networks to Rest: Combatting Deceptive Health Plan Provider Directories*, 40 Yale L. & Pol'y Rev. 78, 81 (2021).

2

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 19 of 132 PAGEID #: 187
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 4:43 AM-23CV007417
0G586 - P66

offer plans of differing value levels, described as "bronze," "silver," and "gold," with gold plans offering the most benefits and therefore commanding the highest premium. *See* 42 U.S.C § 18022 (d)(1) ("Levels of coverage defined").

9. These plans are then offered on state ACA marketplaces, generally known as the "Healthcare Marketplace." Each year, these state marketplaces set a period of "open enrollment," during which individuals may enroll in an ACA plan for the first time or renew their coverage from a prior year. More than 290,000 people were enrolled in Ohio ACA plans as of the 2023 open enrollment period.[2]

10. These vast state marketplaces give insurers, such as Anthem, access to many millions of dollars in premium payments annually. These premium costs impose significant burdens for many ACA enrollees, who are purchasing insurance directly rather than through an employer. To help reduce this financial burden, the ACA offers subsidies in the form of the premium tax credit and cost sharing reductions. Through the premium tax credit, the government helps enrollees pay their insurers, such as Anthem, for the monthly price of insurance. These forms of aid help consumers pay the premiums and other costs charged by companies such as Anthem, for plans offered on the state ACA marketplaces.

11. In exchange for access to this vast market, each qualified health plan ("QHP") must "[m]aintain[] a network that is sufficient in number and types of providers, including providers that specialize in mental health and substance use disorder services, to ensure that all services will be accessible without unreasonable delay[.]" 45 C.F.R. § 156.230(a)(ii).

---

[2] *Ohio health insurance marketplace guide 2023*, https://www.healthinsurance.org/states/health-insurance-ohio/ (last visited September 29, 2023).

3

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 19 of 132 PAGEID #: 178
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 9:23 AM-23CV007473
0G586 - P67

12. Each plan must also maintain "an up-to-date, accurate, and complete provider directory, including information about which providers are accepting new patients, the provider's location, contact information, specialty, medical group, and any institutional affiliations, in a manner that is easily accessible to plan enrollees" and "prospective enrollees." 45 C.F.R. § 156.230(b)(2). The directory also "must identify providers that are not accepting new patients." *Id.* § 156.230(b)(1).

13. Further, each plan must "provide a written summary of benefits and coverage" to any person who applies for coverage. 45 C.F.R. § 147.2000(a)(1). This summary must include "[f]or plans and issuers that maintain one or more networks of providers, an Internet address (or similar contact information) for obtaining a list of network providers[.]" *Id.*, § 147.200(a)(2)(i)(M).

14. Ohio parallels these federal rules, requiring each ACA plan to "ensure that the format and content of a provider directory of a health benefit plan is sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive[.]" Ohio Admin. Code § 3901-8-16.

15. Unfortunately, Anthem has not complied with these directory requirements, as it has failed to deliver access to the full network of providers advertised in its directory. In the health insurance industry, "[i]naccurate directories are known as 'ghost networks' or 'phantom networks' and are a pervasive issue in the American health care system."[3]

16. Ghost networks are of particular concern with ACA Marketplace plans. For example, California secret shopper survey found that while, "[f]or *non-Marketplace* plans, in only about percent of cases did the provider not accept the insurance plan presented by the caller,"

---

[3] Abigail Burman, *Laying Ghost Networks to Rest: Combatting Deceptive Health Plan Provider Directories*, 40 Yale L. & Pol'y Rev. 78, 81 (2021).

4

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 1:32 PM-23CV007439
0G586 - P68
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 9 of 32 PAGEID #: 179

"[t]he number reached 4 percent *for Marketplace plans* (ranging from 2 percent to 8 percent)."[4] (Emphasis added). Put differently, while some health plans managed to keep inaccuracies down to 1%, some Marketplace plans falsely inflated the actual size of their actual network by 8%.

17. Other studies have shown that some Marketplace plans mislead consumers as to the number of providers available to accept new patients. One such study was conducted by the Centers for Medicare and Medicaid Services ("CMS"). "[I]n CMS's annual compliance review for plan year 2020, CMS found that all seven QHP issuers selected for the review had at least one deficiency with provider directories, *such as information for a provider's specialty or status of accepting new patients.*"[5]

18. Prior to the 2022 "No Surprises Act," these inaccuracies often led patients to incur out-of-pocket expenses when they obtained treatments from out-of-network providers improperly listed as in-network. These costs included higher deductible payment for the out-of-network care, along with "balance bills," in which enrollees are personally billed by providers falsely listed as in-network.

19. By promising a more extensive network than it delivered, Anthem cheated its subscribers out of the value they bargained for. Studies have shown that consumers are willing to pay higher prices in exchange for larger networks of providers to choose from, as well as for the ability to access care without travelling a great distance.[6] An insurer who charges for access to a

---

[4] https://www.healthaffairs.org/doi/epdf/10.1377/hlthaff.2015.1554 (last visited September 29, 2023).

[5] *PRIVATE HEALTH INSURANCE: State and Federal Oversight of Provider Networks Varies*, GOV. ACCOUNTABILITY OFFICE, at 25 (Dec. 2022) *available online at*: https://www.gao.gov/assets/gao-23-105642.pdf (last visited October 2, 2023) (emphasis added).

[6] In one survey, "[r]espondents were willing to pay $72 for a plan that covered 30% more doctors in their area, $45 to get a plan that would get them to see a doctor 3 days sooner, and $5 to have a doctor covered that would save them 10 minutes of travel time." Eline M van den Broek-Altenburg 1, Adam J Atherly, *Patient preferences for provider choice: a discrete choice experiment*, 26 Am.

5

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 6 of 20 PAGEID #: 180
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 11:32 AM-23CV007478
0G586 - P69

listed network, but then does not provide that network, has failed to deliver the product its policyholder bargained for in its contract.

20. In other words, "when insurance companies host ghost networks, they are selling health coverage under false pretenses, because the [] health providers advertised in their plan directories aren't picking up the phone or taking new patients. In any other business, if a product or service doesn't meet expectations, consumers can ask for a refund. . . . [I]t's a breach of contract for insurance companies to sell their plans for thousands of dollars each month while their product is unusable due to a ghost network."[7]

## ANTHEM'S GHOST NETWORK

21. Class representative Jeremy Bayer purchased coverage from Anthem during the 2021 open enrollment period. He signed up with Anthem in reliance on its advertised network of providers, purchasing the "Anthem Bronze Pathway X HMO" plan.

22. As part of the enrollment process, Bayer received Anthem's "Certificate of Coverage." The Certificate creates a contract between Anthem and subscribers such as Bayer. The contractual promises include the following:

> **Conformity with Law**
> The laws of the State which issued the Certificate of Authority to the Plan, shall be applied to the interpretations of this Certificate. . . . Any provision of this Plan which is in conflict with the laws of the State in which the Group Contract is issued, or with federal law, is hereby automatically amended to conform with the minimum requirement of such laws.

Exhibit A, at 3 (attached). By agreeing to comply with federal law, Anthem affirms that its provider directories meet the accuracy requirements of the ACA.

---

J. Manag. Care 7 (July 1, 2020), *available online at*: https://www.ajmc.com/view/patient-preferences-for-provider-choice-a-discrete-choice-experiment (last visited May 23, 2023).

[7] Senate Finance Committee Chair Ron Wyden, May 3, 2023. *Statement available online at*: https://www.finance.senate.gov/chairmans-news/wyden-calls-for-action-to-get-rid-of-ghost-networks-releases-secret-shopper-study (last visit May 10, 2023).

6

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 3:14 PM-23CV007481
0G586 - P70
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 79 of 132 PAGEID #: 781

23. The Certificate also contains several direct representations regarding the directory. Under the heading, "Provider Directories," the Certificate states "Anthem is required to confirm the list of Network Providers in its Provider Directory every 90 days." Ex. A, at 5.

24. In another section entitled, "How to Find a Provider in the Network," Anthem states: "There are several ways You can find out if a Provider or Facility is in the Network for this Plan. . . . See Your Plan's directory of Network Providers at www.anthem.com, which lists the doctors, Providers, and Facilities that participate in this Plan's Network." *Id.* at 23. Under another heading, "Transparency Requirements," Anthem adds: "You may also obtain the following information on Anthem's website or by calling Member Services . . . : A listing/directory of all Network Providers." *Id.*

25. In reliance on these representations, Bayer has repeatedly used Anthem's provider directory to locate in-network providers. But Anthem's actions show that it has not made a good faith effort to maintain an accurate network directory.

26. Most recently, on August 16, 2023, Bayer's personal care physician referred him to a provider called Novocare. Upon calling Novacare about five days later, Bayer learned Novacare was not part of Anthem's insurance network and so its services could not be used.

27. Anthem continues to misrepresent Novacare's network status as of the filing of this lawsuit.

28. On its website, Anthem maintains a "find care" feature, through which users may view Anthem's network directory ([https://www.anthem.com/find-care/](https://www.anthem.com/find-care/)). Anthem claims this feature allows current subscribers to "[f]ind doctors, hospitals, and more in your plan's network." Under "basic information for guests," Anthem says the "find care" function will allow website users to "[s]elect a plan and find out if a doctor, hospital, or other care provider is in-network."

7

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 9 of 32 PAGEID #: 182
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 4:23 PM-23CV007418
0G586 - P71

Shortly before this lawsuit was filed, Bayer verified that Anthem's website continues to list Novacare as an in-network provider on its website:



This is a false representation.

29. Anthem's website still lists Novacare as in-network and accepting new patients, while stating that the "find care" feature was "Last Updated 10/10/2023." This is a false representation.

30. This was not the first of Anthem's misrepresentations to Plaintiff Bayer. On October 18, 2022, Plaintiff Bayer received treatment from Benjamin Taylor, MD, of OhioHealth Orthopedic. Anthem denied Plaintiff Bayer's claim for benefits just days later. To justify the denial, Anthem stated "[t]his doctor isn't in PATHWAY X TIERED HOSPITAL plan's network." Even as it denied payment on this basis, Anthem's provider directory continued to list Dr. Taylor as part of the plan's network. To avoid substantial out-of-pocket expenses, Plaintiff Bayer was forced to engage in a time-consuming internal appeals process.

31. Similarly, on December 1, 2022, Plaintiff Bayer received treatment from Dr. Earnonn E. Bahson, MD, of OhioHealth Physicians Group Urology, in Colombus Ohio. Anthem's provider directory listed Dr. Bahson as in-network, but Anthem denied payment on the basis that

8

Dr. Bahson was out-of-network. On this occasion, however, the provider advised Plaintiff Bayer that it had become part of Anthem's network in August 2022, but Anthem had continued treating its claims as out-of-network. To avoid unjustified out-of-pocket costs, Plaintiff Bayer was again forced to appeal Anthem's denial of coverage.

32. Other Anthem subscribers report similar inaccuracies in Anthem's network directory. On one consumer forum, several subscribers complain of Anthem denying claims due to providers being out-of-network, even after Anthem's directory listed the same providers as in-network:

- 9/12/2023 review: "Save yourself the headache and find another provider. Every phone call with these people takes HOURS. **I called to get info on dental providers in my network in July, chose a dentist, completed my appointment in Aug only to find out they actually cancelled my dentist plan back in APRIL and at the time of asking them for provider info in July they were unaware of this and failed to provide this accurate info that would affect my service providers, now I am stuck filing a grievance due to them not covering the dentist cleaning service for $500 that THEY recommended to me and told me I was covered**.. The incompetence in the representatives here is absolutely mind blowing. You get better service at the local 7/11. How the F does a insurance company recommend a provider and confirm the coverage when I never had the coverage in the first place? Happy to say my services are almost over and I will be finding a new provider during open enrollment. NEVER AGAIN. SCAM SCAM SCAM."[8]

- 9/12/2023 review: "If I could give a negative rating, I would. They've screwed up almost every transaction I've had with them. **The most recent being denying an office visit to my Primary Care Physician, who is clearly listed on their site as in their network and who I saw last year**. . . . [I]f I could choose any other provider I would."[9]

- 7/26/2023 review: "Anthem Blue Cross is the worst nightmare company you could ever imagine. I have had the insurance for 7 months and seen a doctor 4 times for preventive care and other appointments. **Even though the doctors are listed on there web site as in-network they deny the in-network coverage when they send me the bill. I do not believe they have any in network providers even though they say they do. They blame the doctors**

---

[8] https://www.bbb.org/us/oh/worthington/profile/health-insurance/anthem-blue-cross-blue-shield-0302-912/customer-reviews (last visited October 2, 2023) (emphasis added).

[9] *Id.* (emphasis added).

9

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 10 of 20 PAGEID #: 84
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 9:22 AM-23CV007484
0G586 - P73

and everything else for there inability to tell you what doctors are in there network. It truly is a joke. I can't imagine what would happen and the hours I would have to spend dealing with a claim, if I had to go into the hospital. If you like pain and suffering this company is for you. If I could give them a zero I would."[10]

- 3/8/2023 review: "They are way too hoity-toity about who is in the it network and who isn't. I had to switch multiple providers when my work switched to these guys."[11]

- 11/11/2022 review: "I began to get red flags once I tried to use their policy for a simple physical exam . . . **Providers are listed as 'in-network' who are clearly not. ok**. Mea culpa. They advise you to check with a phone call, so fine... I tested random entries on Anthem's provider list with too-common results: The provider would tell me that they take Anthem/BlueCross but, when pressed, would reveal that they do not. I have spent over an hour on the phone with a kind rep from Anthem who did their level best to help me but lacked the information necessary to answer my questions. I don't fault the agent, they were great. Their company failed them with systemic problems."[12]

- 2/16/2022 review: "Horrible experience. Bait and switch. **Before signing up with Anthem Blue Cross, I checked to ensure they covered my provider (****), and they did. Then, conveniently weeks AFTER enrollment ended, they sent a letter saying that my provider is no longer part of the plan retroactively per the first of the year. If they had let me know BEFORE open enrolment ended, I could have changed to a different insurer. But then again, they know that, which is precisely why they don't let you know beforehand in the first place**. Anthem is a big company, and they can afford to jerk you around, placing the burden of doing something about it on you. Which they then make as arduous as possible until you give up."[13]

33. These complaints show that Anthem's inaccurate directory is not the product of one-off mistakes or isolated incidents. By advertising a significantly larger network of providers than enrollees have meaningful access to, Anthem has obtained subscribers that would not have purchased its health plan, had it made a truthful disclosure.

34. The same consumer forum teems with complaints of Anthem refusing to resolve unjustified denials without unreasonable delay and lengthy, formal appeals:

---

[10] *Id.* (emphasis added).
[11] *Id.*
[12] *Id.* (emphasis added).
[13] *Id.*

10

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 11 of 20 PAGEID #: 185
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 2:52 AM-23CV007478
0G586 - P74

- 2/1/2023 review: "Since switching to Anthem in January I have had 2 major medications denied coverage. . . . Anthem rep said they didnt know what was going on and they would have to look into it. Fast forward 1 weeks and 2 emails later. No one called me back and im not getting anywhere. So ive spent hours on the phone to get the coverage im paying for. . . . . [T]his entire process has been made extremally difficult for the soul purpose of not covering claims and hoping that you get tired of getting what you paying for. Never had this happen in the 20 year of having health care." [14]

- 12/03/2022 review: "This is the worst insurance and they should be sued for malpractice . **I had preventative blood work in network and it came back out of network**. I have been trying since March to get this rectified and **out of the 10 times I have called (no joke) I have received the same answer** which is we will make this urgent. The absolute worst team and insurance." [15]

- 11/22/2022 review: "From a provider standpoint, I have an extremely hard time reaching any representatives to discuss denied claims. I call the number on the back of the patient's card, and the prompts state that the number is used for Prior Auth or Eligibility only and to utilize Availity for claim status. Using Availity is a waste of time - when you search for a specific claim, you are unable to submit anything and it will only tell you that the claim is denied." [16]

- 4/17/2022 review: "Vile company. Same issues as everyone else. . . . 3. **Says services are covered, but when I reach out the available in-network providers, they're unavailable**. . . . Their MO is to make it as painful as possible to reimburse you. As a small business owner, every hour I waste with Anthem is an hour unpaid." [17]

35. These reports capture Anthem's financial incentive for making it difficult to overturn denials arising from Anthem's inaccurate directory. The more time, expense, and effort subscribers must devote to appealing denials, the more likely they are to simply give up and absorb out-of-pocket costs. This allows Anthem to retain premiums without providing meaningful access to the network of providers it advertised.

36. By providing a materially smaller network of providers than advertised in its directories, Anthem cheats its subscribers out of the value for which they bargained.

---

[14] *Id.*
[15] *Id.* (emphasis added).
[16] *Id.*
[17] *Id.* (emphasis added).

11

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 12 of 20 PAGEID #: 186
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 12 9:32 AM-23CV007486
0G586 - P75

37. All conditions precedent to this lawsuit, to the extent they exist, have been satisfied or waived.

## CLASS ACTION ALLEGATIONS

38. Pursuant to Ohio Rule of Civil Procedure 23(A), (B)(1), and/or (B)(3), Plaintiff brings this Class Action individually and on behalf of the following Class, which is tentatively defined as follows:

> All individuals in the state of Ohio who, during the applicable limitations period, purchased insurance under an Anthem plan through the ACA Healthcare Marketplace (the "Class").

39. Plaintiff reserves the right to modify or amend the definition of the proposed Class before or after the Court determines whether such certification is appropriate as discovery progresses.

40. **Numerosity:** The Class is comprised of hundreds, if not thousands, of customers throughout the state of Ohio. The Class is so numerous that joinder of all Class members is impracticable. The precise number of class members is unknown to Plaintiff, but the precise number and identity of class members are easily identifiable through Defendant's records.

41. **Commonality:** This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Anthem's inaccurate and misleading directory of in-network providers violates federal law, which is incorporated by reference into Anthem's contract;

   b. Whether Anthem's inaccurate and misleading directory of in-network providers violates Ohio law, which is incorporated by reference into Anthem's contract;

12

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 2:32 AM-23CV007487
0G586 - P76
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 19 of 52 PAGEID #: 187

    c. Whether Anthem's maintenance of an inaccurate directory constitutes a breach of Plaintiff and the class members' contracts;

    d. Whether Anthem's maintenance of an inaccurate directory constitutes a breach of good faith and fair dealing; and

    e. Whether, during each open enrollment period, Anthem engaged in fraud by failing to make a good faith effort to ensure the accuracy of its advertised network directory to prospective enrollees.

42. **Typicality:** Plaintiff's claims are typical of the claims of the Class members because among other things, all Class members were injured through the uniform misconduct described above, all Class members have purchased insurance through the Healthcare Marketplace from Anthem just like Plaintiff, and Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members.

43. **Adequacy of Representation**: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class. To prosecute this case, Plaintiff has chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation. Plaintiff anticipates no difficulty in the undersigned law firms' management of this litigation as a class action.

44. **Predominance:** Anthem has engaged in a common course of conduct toward Plaintiff and Class Members, in that all claims by Plaintiff and the unnamed Class members are based on the common course of conduct by Anthem to publish misleading and incorrect lists of network providers to Plaintiff and the unnamed Class members.

13

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 14 of 20 PAGEID #: 188
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 14 1:32 AM-23CV007488
0G586 - P77

45. The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual Class members.

46. **Superiority:** A class action is superior to individual actions in part because of the several factors, including but not limited to the following:

   a. Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the State of Ohio;

   b. Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

   c. There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

   d. The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

   e. Individual suits would not be cost effective or economically maintainable as individual actions; and

   f. The action is manageable as a class action.

47. Anthem has acted and refused to act on grounds generally applicable to the Class by engaging in a common course of conduct by publishing misleading and inaccurate network lists, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (Breach of Promise to Comply With Federal Law)

48. Plaintiff re-alleges paragraphs 1-47 as if fully set forth herein.

14

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 15 2:22 AM-23CV007189
0G586 - P78
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 15 of 20 PAGEID #: 189

49. Plaintiff and the Class members entered formed contracts with Anthem, as laid out in the Certificate of Coverage and related documents.

50. As alleged above, Anthem's Certificate of Coverage informed Plaintiff Bayer that his contract incorporates federal and state law: "Any provision of this Plan which is in conflict with the laws of the State in which the Group Contract is issued, or with federal law, is hereby automatically amended to conform with the minimum requirement of such laws."

51. By agreeing to comply with federal law, Anthem agreed to maintain "an up-to-date, accurate, and complete provider directory, including information about which providers are accepting new patients . . . in a manner that is easily accessible to plan enrollees" and "prospective enrollees." 45 C.F.R. § 156.230(b)(2). Anthem breached this promise by consistently providing an inaccurate network directory that is not up to date.

52. Anthem's Certificate of Coverage also directly states that its directory would identify those providers who are in Anthem's network. For instance, Anthem tells enrollees they may "find out if a Provider or Facility is in the Network" by referring to the "directory of Network Providers at www.anthem.com, which lists the doctors, Providers, and Facilities that participate in this Plan's Network." Despite promising to identify in-network providers, Anthem's directory is inaccurate and significantly overstates the number of directors who are in-network.

53. Based on information and belief, including a sample review of Anthem's policy forms online and the federal requirements, Plaintiff alleges that all of Anthem's contracts contain similar language, promising a network directory that complies with federal law and Ohio law. By providing an inaccurate directory that overstates the size of Anthem's provider network, Anthem has breached these contractual obligations.

15

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 16 of 20 PAGEID #: 78
Franklin County Clerk of Courts of the Common Pleas- 2023 Oct 16 1:22 AM-23CV007490
0G586 - P79

54. Plaintiff's health insurance policy and the health insurance policies of Class members do not provide for or authorize the publishing of an inaccurate directory; Plaintiff's health insurance policy and the health insurance policies of Class members do not provide for or authorize the publishing of an inaccurate directory; indeed, policyholders expect the opposite.

55. Anthem, in advertising for sale and selling the health insurance policy purchased by Plaintiff, sought to represent, and did in fact represent, that its network providers list was more extensive than it was, thereby failing to fulfill its duty to provide Plaintiff and Class members access to all providers listed.

56. In misrepresenting the size of the network, and by failing to provide an accurate and current list of network providers, Anthem breached the health insurance policy.

57. As a direct and proximate result of Anthem's breach, Plaintiff and Class members suffered damages by paying for access to a larger network of providers than Anthem actually provided.

### COUNT II
### Breach of Contract
### (Breach of Promise to Comply With State Law)

58. Plaintiff re-alleges paragraphs 1-47 as if fully set forth herein.

59. Plaintiff and the Class members entered formed contracts with Anthem, as laid out in the Certificate of Coverage and related documents.

60. As alleged above, Anthem's Certificate of Coverage informed Plaintiff and the Class members that his contract incorporates federal and state law: "Any provision of this Plan which is in conflict with the laws of the State in which the Group Contract is issued, or with federal law, is hereby automatically amended to conform with the minimum requirement of such laws."

16

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 17 2:32 PM-23CV007481
0G586 - P80
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 17 of 20 PAGEID #: 91

61. By agreeing to comply with Ohio law, Anthem agreed to "ensure that the format and content of a provider directory of a health benefit plan is sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive[.]" Ohio Admin. Code § 3901-8-16.

62. Anthem breached this promise by consistently providing an inaccurate network directory that is not up to date.

63. Anthem's Certificate of Coverage also directly states that its directory would identify those providers who are in Anthem's network. For instance, Anthem tells enrollees they may "find out if a Provider or Facility is in the Network" by referring to the "directory of Network Providers at www.anthem.com, which lists the doctors, Providers, and Facilities that participate in this Plan's Network." Despite promising to identify in-network providers, Anthem's directory is inaccurate and significantly overstates the number of directors who are in-network.

64. Based on information and belief, including a sample review of Anthem's policy forms online and the federal requirements, Plaintiff alleges that all of Anthem's contracts contain similar language, promising a network directory that complies with federal law and Ohio law. By providing an inaccurate directory that overstates the size of Anthem's provider network, Anthem has breached these contractual obligations.

65. Plaintiff's health insurance policy and the health insurance policies of Class members do not provide for or authorize the publishing of an inaccurate directory; Plaintiff's health insurance policy and the health insurance policies of Class members do not provide for or authorize the publishing of an inaccurate directory; indeed, policyholders expect the opposite.

66. Anthem, in advertising for sale and selling the health insurance policy purchased by Plaintiff, sought to represent, and did in fact represent, that its network providers list was more

17

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 18 4:43 AM-23CV007492
0G586 - P81
Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 18 of 20 PAGEID #: 192

extensive than it was, thereby failing to fulfill its duty to provide Plaintiff and Class members access to all providers listed.

67. In misrepresenting the size of the network, and by failing to provide an accurate and current list of network providers, Anthem breached the health insurance policy.

68. As a direct and proximate result of Anthem's breach, Plaintiff and Class members suffered damages by paying for access to a larger network of providers than Anthem actually provided.

### COUNT III
### Breach of the Implied Covenant of
### Good Faith and Fair Dealing

69. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-47.

70. The health insurance policy between Plaintiff and Anthem included an implied covenant of good faith and fair dealing.

71. Anthem breached the implied covenant of good faith and fair dealing by (1) failing to make a good faith effort to maintain an up-to-date network directory, and (2) failing to maintain a reasonable procedure for resolving coverage denials caused by Anthem's false representations about providers' network status. Anthem's consistent pattern of inaccuracies, denials, and delayed resolution shows these are not isolated incidents but are a result of Anthem's institutional policies.

72. By consistently delivering a less extensive network than advertised, and by making it difficult to resolve unjustly denied claims, Anthem's actions disincentivize subscribers from attempting to use their coverage. To the extent Anthem has profited from its failure to adopt reasonable procedures for maintaining an accurate network or claims resolution process, Plaintiff and the Class members are entitled to disgorgement of Anthem's profits.

18

Case: 2:23-cv-03876-SDM-CMV Doc #: 3 Filed: 11/21/23 Page: 19 of 22 PAGEID #: 93
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Oct 19 2:22 AM-23CV007489
0G586 - P82

73. Plaintiff has suffered damages as a direct and proximate result of Anthem's breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and Class Members, requests judgment against Anthem and that the Court grants the following:

a. Certifying the Class as requested herein;

b. Designating Plaintiff Jeremy Bayer as representative of the Class;

c. Designation of undersigned counsel as Class counsel;

d. Awarding damages to Plaintiff and Class members;

e. Awarding restitution and disgorgement of Anthem's revenues to Plaintiff and consumers in the Class, to the extent Anthem increased its profits by failing to maintain reasonable procedures for ensuring network accuracy and by advertising a larger network than it made available to subscribers;

f. Awarding declaratory and injunctive relief as permitted by law or equity, including declaring Anthem's practices to be unlawful and enjoining Anthem from continuing to maintain its inadequate procedures for ensuring an accurate network directory and resolving claims denials;

g. Awarding attorneys' fees and costs; and

h. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

19

Dated: October 19, 2023.                        Respectfully Submitted,

/s/ *Laren E. Knoll*
Laren E. Knoll, Esq.
Ohio Bar No. 0070594
The Knoll Firm LLC
7240 Muirfield Drive, Ste 120
Dublin, Ohio 43017
Tel.: (614) 372-8890
Fax: (614) 452-4850
lknoll@knolllaw.com

/s/ *Karl J. Amelchenko*
Karl J. Amelchenko**
Milberg Coleman Bryson
Phillips Grossman, PLLC
900 W. Morgan Street
Raleigh, NC 27603
Tel.: 919-600-5000
kamelchenko@milberg.com

/s/ *Mark E. Silvey*
Mark E. Silvey**
Milberg Coleman Bryson
Phillips Grossman, PLLC
201 Sevilla Ave, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
msilvey@milberg.com

Jimmy W. Mintz**
Milberg Coleman Bryson
Phillips Grossman, PLLC
201 Sevilla Ave, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
jmintz@milberg.com

**Pro Hac Vice Applications Forthcoming*