UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JEREMY BAYER,** *on behalf of himself and all others similarly situated*, | : |
| Plaintiffs, | : |
| v. | :     **Case No. 2:23-cv-3876** <br> **Judge Sarah D. Morrison** <br> **Magistrate Judge Chelsea M. Vascura** |
| **COMMUNITY INSURANCE CO. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,** | : |
| Defendant. | |

**OPINION AND ORDER**

Jeremy Bayer brings two claims for breach of contract and one claim for breach of the implied covenant of good faith and fair dealing against Community Mutual Insurance Company d/b/a Anthem Blue Cross and Blue Shield. (Compl., ECF No. 3.) He originally commenced this action in the Court of Common Pleas in Franklin County, Ohio. (*Id.*) Anthem timely removed the action to this Court, asserting that removal was proper pursuant to 28 U.S.C. §§ 1441 and 1446 and in accordance with 28 U.S.C. § 1331. (ECF No. 1, PAGEID # 2.) Anthem contends that this Court has federal question jurisdiction pursuant to *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because one of Mr. Bayer's breach of contract claims is premised on the allegation that Anthem violated federal law. (*Id.*, PAGEID # 1.)

To assure itself that it has subject matter jurisdiction, this Court ordered the parties to brief the issue of whether the Complaint implicates a substantial question of federal law. (ECF No. 6.) Following review of the parties' briefs and the case law, this Court **REMANDS** the case due to lack of jurisdiction.

## I.      COMPLAINT ALLEGATIONS

Mr. Bayer brought this case as a putative class action "on behalf of Ohio consumers who purchased insurance from Anthem through the Affordable Care Act ('ACA') marketplace during open enrollment periods 2018–2023." (Compl. ¶ 1.) The gravamen of the Complaint is that Anthem's directory of "in-network" healthcare providers is a "ghost network" because many of the listed providers "are not currently in Anthem's network, are not accepting new patients, or do not practice the specialty described by Anthem." (*Id.* ¶¶ 1–2.)

The Complaint alleges that ghost networks are prohibited by both the ACA and Ohio law, and it quotes several provisions of the Code of Federal Regulations and the Ohio Administrative Code in support:

> 11.     … [E]ach qualified health plan ("QHP") must "[m]aintain[] a network that is sufficient in number and types of providers, including providers that specialize in mental health and substance use disorder services, to ensure that all services will be accessible without reasonable delay[.]" 45 C.F.R. § 156.230(a)(ii)).
>
> 12.     Each plan must also maintain "an up-to-date, accurate, and complete provider directory, including information about which providers are accepting new patients, the provider's location, contact information, specialty, medical group, and any institutional affiliations, in a manner that is easily accessible to plan enrollees" and "prospective enrollees." 45 C.F.R. § 156.230(b)(2). The directory also "must identify providers that are not accepting new patients." *Id.* § 156.230(b)(l).

2

> 13. Further, each plan must "provide a written summary of benefits and coverage" to any person who applies for coverage. 45 C.F.R. § 147.2000(a)(l). This summary must include "[f]or plans and issuers that maintain one or more networks of providers, an Internet address (or similar contact information) for obtaining a list of network providers[.]" *Id.*, § 147.200(a)(2)(i)(M).
>
> 14. Ohio law parallels these federal rules, requiring each ACA plan to "ensure that the format and content of a provider directory of a health benefit plan is sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive[.]" Ohio Admin. Code § 3901-8-16.

(Compl. ¶¶ 11–14.)

Mr. Bayer purchased insurance coverage from Anthem during the 2021 open enrollment period. (Compl. ¶ 21.) As part of the enrollment process, Anthem presented him with a Certificate of Coverage, which he alleges required Anthem to offer a network of providers in compliance with the ACA and Ohio law. (*Id.* ¶ 22.) Instead, according to Mr. Bayer, Anthem "provid[ed] a materially smaller network of providers than advertised in its directories" by misrepresenting providers' network status and failing to maintain an accurate network directory. (*Id.* ¶¶ 27, 35–36, 56, 67.) Mr. Bayer claims that through this conduct, Anthem breached its contract with him and other subscribers in that it "breached [its] promise" to comply with federal law (Count I) and its promise to comply with state law (Count II). (*Id.* ¶¶ 51, 62.) Mr. Bayer also asserts that Anthem breached the implied covenant of good faith and fair dealing (Count III). (*Id.* ¶ 71.)

Anthem removed this case and argues that this Court has federal question jurisdiction because Count I of the Complaint alleges that Anthem's network maintenance practices violated the ACA. (ECF No. 1.)

3

## II. SUBJECT MATTER JURSDICTION

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendants bear the burden of establishing that removal was proper. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Removal raises significant federalism concerns, and, for this reason, a federal court must resolve any doubt of its removal jurisdiction in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases which are within the judicial power of the United States as defined in the United States Constitution and as further granted to them by Congress. *Finley v. United States*, 490 U.S. 545, 550 (1989); *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). Therefore, there is a presumption that a federal court lacks jurisdiction until it has been demonstrated, so a federal court is obliged to *sua sponte* note lack of subject matter jurisdiction. *Capron v. Van Noorden*, 6 U.S. 126, 127 (1804); *Clark v. United States*, 764 F. 3d 653, 657 (6th Cir. 2014).

### A. Federal Question Jurisdiction

Federal question jurisdiction exists when the civil action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under federal law if the cause of action (1) is created by federal statute; or (2) presents a substantial question of federal law. *Miller v. Bruenger*, 949 F.3d 986, 991

4

(6th Cir. 2020). The former is more common—a federal question exists when federal law creates the cause of action. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016).

The "less frequently encountered" variety of federal question jurisdiction exists when state-law claims "implicate significant federal interests." *Grable*, 545 U.S. at 312–13. This "substantial federal question doctrine" encompasses the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Id.* at 312. But a federal issue is not treated "as a password opening federal court to any state action embracing a point of federal law." *Id.* at 314; *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (describing substantial question jurisdiction as a "slim category").

The existence of federal question jurisdiction is determined by the well-pleaded complaint rule, which examines whether a federal question exists on the face of the plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To fall within the "slim category" of cases encompassed by the substantial federal question doctrine, the state-law claim must (1) necessarily raise a stated federal issue that (2) is "disputed and substantial" and that (3) a federal forum must be able to entertain "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1020 (6th Cir. 2018) (citing *Grable*, 545 U.S. at

312–13); *see also Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (citation and internal quotations omitted) (noting that federal courts have jurisdiction in "only those cases in which … federal law creates the cause of action or that the plaintiff['s] right to relief necessarily depends on resolution of a substantial question of federal law"). This Court will consider each *Grable* requirement in turn.

### 1. The Complaint does not necessarily raise a stated federal issue.

The resolution of Mr. Bayer's action does not necessarily depend on the resolution of a question of federal law. Although Mr. Bayer styled his Complaint to set forth two different *counts* for breach of contract, there is only one breach of contract *claim*—both "counts" are premised on the same alleged conduct (Anthem's "inaccurate and misleading directory of in-network providers") that Mr. Bayer contends was a breach of the same contractual provision (compliance with federal and state law), resulting in the same damages (paying for access to a larger network of providers than Anthem actually provided). (Compl. ¶¶ 36, 53, 56–57, 64, 67–68.) Thus, the proper construction of the Complaint is that Mr. Bayer maintains only one breach of contract claim with two distinct theories as to the source of Anthem's liability.[1]

Considering the reality that Mr. Bayer has asserted both federal and state

---

[1] For this reason, this case is more akin to cases such as *Dominion Pathology Labs. P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 737 (E.D. Va. 2015), and *Desai v. CareSource, Inc.*, No. 3:18-CV-118, 2019 WL 1109568, at *3 (S.D. Ohio Mar. 11, 2019) (Rose, J.), in which the plaintiffs asserted a single breach of contract claim arguably based in both federal and state law.

bases of liability for his breach of contract claim, the federal issue is not necessarily raised by the Complaint. The Court could determine that Anthem violated state law, in which case the federal question need not be addressed at all. In other words, the alleged contractual breach of a promise to comply with federal law only needs addressed if the Court determines that Anthem complied with state law. This situation differs from cases in which plaintiffs bring separate claims for violations of federal and state law (such as a claim under Title VII and a claim under Ohio Rev. Code. Chapter 4112), over which the Court would have federal question (and supplemental) jurisdiction. But under the circumstances here,[2] the federal issue raised by the Complaint is not necessary. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809–10 (1988) ("[A] claim supported by alternative theories in the complaint" does not "arise under" federal patent law "unless federal patent law is essential to each of those theories"); *Long*, 201 F.3d at 760 (resolution of federal question not "*necessary* or *essential*" to resolution of claim when "complaint put forth alternate bases in state and federal law") (emphasis in original); *Desai*, 2019 WL 1109568, at *1, *3 (finding suit did not "necessarily raise" issue of federal law when "Plaintiff can assert that Defendant failed to uphold the promises made irrespective of whether they were made to comply with federal law"); *Dominion*, 111 F. Supp. 3d at 737 (federal question incidental where breach of contract claim predicated in part on conduct not related to federal law and could be

---

[2] Congress did not create a private right of action to enforce particular provisions of the ACA. (ECF No. 12, PAGEID # 237; ECF No. 14, PAGEID # 249); *see also Desai*, 2019 WL 1109568, at *3 (quoting *Dominion*, 111 F. Supp. 3d at 736).

7

resolved without referencing federal law).

### 2. The federal issue is not substantial.

To warrant federal question jurisdiction, "the federal issue must not only be contested but also substantial." *Miller*, 949 F.3d at 993. In determining "substantiality," the Court considers the following factors:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute;
> (2) whether the federal question is important (*i.e.* not trivial);
> (3) whether a decision on the federal question will resolve the case (*i.e.* the federal question is not merely incidental to the outcome); and
> (4) whether a decision on the federal question will control many other cases (*i.e.* the issue is not anomalous or isolated).

*Est. of Cornell*, 908 F.3d at 1015 (cleaned up) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007)). "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Mikulski*, 501 F.3d at 570. Here, the factors weigh against a finding that the federal issue in Mr. Bayer's Complaint is substantial.

Starting with the first factor, no federal agency is part of this action, and there is no allegation that a federal agency action violated the law.[3] Rather, Mr.

---

[3] The Supreme Court found a national interest in providing a federal forum for the dispute in *Grable* even though there was no federal agency that was a party to the litigation. *Grable*, 545 U.S. at 310–11. However, unlike here, the conduct of the federal agency was at the heart of the dispute in *Grable*—the plaintiff in that case claimed that the defendant's title to real property was invalid because the Internal Revenue Service had failed to comply with federal law when it seized the

8

Bayer's dispute is premised on a state-law claim for breach of contract between non-governmental entities. *See Funderwhite v. Joint Apprenticeship & Training Comm. of Cleveland Journeymen Plumbers Loc. No. 55*, 196 F. Supp. 3d 757, 764 (N.D. Ohio 2016), *aff'd sub nom. Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308 (6th Cir. 2017) (federal interest not substantial where no federal agency was party to contract that was subject of breach of contract action or played part in alleged breach).

The second factor considers the "importance" of a federal question; courts are to determine whether the federal question "implicates any broader or more substantial issue." *Funderwhite*, 196 F. Supp. 3d at 764; *see also Gunn v. Minton,* 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."). Here, Anthem argues that the issues of what is a "sufficient" provider network and what constitutes "unreasonable" delay have applicability to all plans offered on ACA exchanges in every state. (ECF No. 14, PAGEID # 247.) But Anthem has not shown that the federal government has a particular interest in these issues, thereby undercutting its argument. As the Eastern District of Virginia recognized, "the lofty purpose of the ACA does not make every issue touching the ACA 'an important federal issue.'" *Dominion*, 111 F. Supp. 3d at 738. "Rather, the types of federal issues that are 'important' [for federal jurisdiction] are important to the federal government in a more specific sense." *Id.* For example, in *Grable*, the important

---

plaintiff's property. *Id.*

9

federal issue was the ability of the Internal Revenue Service to effectively collect taxes. *Grable*, 545 U.S. at 315. There is no comparable federal interest in this case.[4]

Concerning the third factor (whether a decision on the federal question will resolve the case), as explained above, the resolution of this case does not necessarily depend on the resolution of a question of federal law. *See, e.g.*, *Emergency Med. Care Facilities*, 2017 WL 237650, at *7 (federal issue not substantial because federal issue need not be addressed at all depending on resolution of state issue).

Finally, with respect to the fourth factor, it may be true that the federal issue is not necessarily "anomalous" or "isolated." However, as detailed above, the Court is uncertain whether it would in fact need to answer the federal law question. Regardless, this factor does not outweigh the Court's conclusions as to the other substantiality factors.

### 3. This suit is more appropriately maintained in state court.

The last prong of the *Grable* inquiry concerns whether the Court may hear this case without disturbing the established federal-state court balance. This factor, like the other two *Grable* elements, weighs against federal jurisdiction. Mr. Bayer's breach of contract claims are state-law claims, and his alleged violation of state law may be dispositive. *See Harris v. Ambrozic*, No. 5:05-cv-1681, 2005 WL 1593921, at

---

[4] The fact that it may not be necessary to rule on any federal issue in this case also supports remand under the importance factor—where a court has decided that it is unnecessary to interpret federal law to rule on a plaintiff's case, the importance factor has not been met. *See Emergency Med. Care Facilities, P.C. v. BlueCross Blueshield of Tennessee, Inc.*, No. 15-1014, 2017 WL 237650, at *7 n.5 (W.D. Tenn. Jan. 19, 2017) (citing *Funderwhite*, 2016 WL 3913678, at *6).

*1 (N.D. Ohio 2005) (observing that "breach of contract ... [is a] state law claim"). Similarly, "[m]ost insurance disputes arise under state law and are resolved in state court." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins.*, 756 F.3d 1032, 1035 (7th Cir. 2014). "[G]ranting federal jurisdiction here would risk swinging open the federal courtroom doors to any [contractual] dispute" that simply raises the buzzwords "federal law." *Miller*, 949 F.3d at 994. Proceeding in federal court would therefore disturb the federal-state balance approved by Congress.

## III.  CONCLUSION

For the reasons set forth above, this case is hereby **REMANDED** to the Franklin County, Ohio Court of Common Pleas. The Clerk is **DIRECTED** to terminate all pending motions and close this case.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**